IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TYRNN SMILEY, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-59-2643 |
| | § | |
| WAYNE BLEVINS, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is Galveston Independent School District's Amended Motion for Declaration of Unitary Status (Docket Entry No. 255). For the reasons explained below, the motion will be granted, the Galveston Independent School District will be declared unitary, and this action will be dismissed.

## I. Procedural History

In the wake of the Supreme Court's decision in Brown v. Board of Education of Topeka, Shawnee County, Kansas, 74 S.Ct. 686 (1954), this action was commenced on August 18, 1959, by Patricia Ann Robinson and others against Dr. Morgan Evans and others to eliminate Galveston Independent School District's (GISD) racially segregated school system and to replace that dual system with an integrated, unitary school system.

On January 23, 1961, Judge Ben Connally entered an order directing GISD to implement "a 'stair-step' freedom of choice plan

aimed at totally dismantling [GISD]'s dual school system by September 1973." See Smiley v. Blevins, 514 F.Supp. 1248, 1251 (S.D. Tex. 1981).[1]

In 1969 GISD abandoned the freedom of choice plan in favor of "a neighborhood school assignment program which in operation achieved a greater degree of desegregation district-wide than required by the 1961 order." Id. However, "the plan . . . prove[d] unsuccessful as a tool for desegregating three historically black elementary schools[:] Washington, Goliad and Carver." Id. At the end of the 1974-75 school year when Washington ceased operating, 85% of its students were African-American, and the student population at Goliad and Carver was 94% and 90% African-American, respectively. By comparison, the district-wide elementary school population was 41% African-American. Id.

On May 23, 1975, GISD moved to substitute parties defendant and to suggest the appointment of new or additional representative plaintiffs.[2] On December 8, 1975, Judge James Noel ordered that Frank Vollert, GISD's superintendent, and the members of GISD's

---

[1] See Order on Integration, Docket Entry No. 7.

[2] See Docket Entry No. 8 reflecting the filing of

Defendant, School District's MOTIONS (1) to SUBSTITUTE PARTIES DEFENDANT; (2) TO IMPLEAD ADDITIONAL DEFENDANTS; (3) FOR LEAVE TO PLEAD FOR INJUNCTIVE AND/OR DECLARATORY RELIEF AND, ALTERNATIVELY, FOR MODIFICATION OF THE COURT'S EXISTING ORDER AND (4) TO SUGGEST THE APPOINTMENT OF NEW OR ADDITIONAL REPRESENTATIVE PLAINTIFFS.

Board of Trustees be substituted as defendants for those originally named.[3]

In 1975 GISD obtained voter approval for a bond issue to finance construction of a modern educational facility intended to replace Washington, Goliad, and Carver elementary schools. The resulting facility is known as Morgan Elementary. Plaintiffs sought to enjoin construction and/or operation of the new facility until GISD implemented a plan to correct an anticipated racial imbalance in its student population. Id.

On May 26, 1976, plaintiffs moved to substitute as parties plaintiff GISD students Tyrnn Smiley and Edith Murphy and their parents, and to substitute as attorney in charge for plaintiffs Weldon Berry in place of Thomas Dent.[4] On July 2, 1976, Judge Noel granted plaintiffs' motion to substitute Berry for Dent as plaintiffs' attorney, and Smiley, Murphy, and their parents as the named plaintiffs.[5] On August 13, 1976, Judge Noel issued an Order certifying this action as a class action and defining the class certified as "all blacks who are, or may in the future be, students in the [GISD] and who claim to be segregated and discriminated against by the defendants because of their race and color."[6] The

---

[3]See Docket Entry No. 21.

[4]Docket Entry No. 41.

[5]Docket Entry No. 52.

[6]Order, Docket Entry No. 57, p. 1.

Order explained that "[t]he rule in effect at th[e] time [this action was filed] did not require a formal order certifying and defining the class," and that the Order was "entered without opposition from defendants to formally certify the class pursuant to Fed. R. Civ. P. 23(c)(1) and define the class pursuant to Fed. R. Civ. P. 23(d)."[7]  The Order also stated "[t]his Order is subject to amendment if at any time before final disposition of this action it is brought to the attention of the Court that the interests of some of the members of the class are no longer adequately represented by the named plaintiffs."[8]

On October 13, 1976, Judge Noel denied plaintiffs' motion to enjoin GISD from constructing Morgan Elementary but entered a preliminary injunction enjoining GISD from utilizing it absent a court order.[9]

By Order dated June 30, 1977, this action was transferred to Judge Finis E. Cowan.[10]  In September of 1977 a four-day trial was held at the conclusion of which Judge Cowan dissolved the preliminary injunction and held that GISD could continue construction and use of Morgan Elementary.[11]

---

[7]Id.

[8]Id. at 2.

[9]Docket Entry No. 70.

[10]See Docket Sheet entry for July 1, 1977.

[11]See Docket Sheet entry for September 9, 1977.

On March 1, 1978, Judge Cowan granted leave for a number of GISD students and their parents to intervene,[12] and informed the parties that a tri-ethnic committee consisting of twelve members would be formed, that nine members would be appointed before the end of that month, and the remaining three members would be appointed later.[13]  On March 21, 1978, Judge Cowan introduced nine members of the tri-ethnic committee, and suggested that the committee meet on the first Friday of every month.  Judge Cowan also granted plaintiffs' request that Idella Crainey be designated as class representative and added as party plaintiff.[14]

On June 16, 1978, Judge Cowan issued an opinion in which he concluded that although GISD had progressed toward eliminating

---

[12]The Clerk's docket list reflects that on March 1, 1978, leave was granted

> for the following to intervene:  Jessie Vaughn, through her parent and next friend, Maggie Jones; James Pomier, through his parent and next friend, Lala J. Cross; Yvonne Sylvester and Ronald Sylvester, through their parent and next friend, Viola Sylvester; Ramona Allen and Rogers Allen, through their parent and next friend, Ollie Allen; James D. Haynes, through his parent and next friend, Idella R. Craney; and Ellsworth Wilcox, Jr., through his parent and next friend, Patricia Ann Robinson Wilcox; and such parties shall thereafter be identified as "Intervenors."

As a child, intervenor, Patricia Ann Robinson Wilcox appears to have been the first named plaintiff in this action:  Patricia Ann Robinson.

[13]Docket Entry No. 96.

[14]Docket Entry No. 97.

every vestige of the prior de jure dual school system, that a single vestige of the dual system remained in the Washington, Goliad, and Carver elementary schools that would be perpetuated by the operation of Morgan Elementary under GISD's neighborhood school assignment policy.  Smiley v. Vollert, 453 F.Supp. 463, 481 (S.D. Tex. 1978).[15]  To eliminate that vestige of de jure segregation, Judge Cowan ordered GISD to desegregate Morgan by operating Morgan as a magnet school for the purpose of attracting white and Hispanic transfer students.  Id. at 467.  The court also set minimally acceptable performance standards, which provided in pertinent part that "[b]y September 30, 1981, the percentage of Black-American pupils at Morgan shall not exceed 50%.  The balance of the student population will be approximately equally divided between Anglo-Americans and Mexican-Americans."  Id. at 469.

In 1978 and 1979 GISD exceeded the court's racial percentage goal for Morgan Elementary, but in 1980 GISD failed to meet the goal.  See Smiley, 514 F.Supp. at 1252.  Realizing that the September 1981 goal could not be obtained, on December 5, 1980, GISD moved the court to modify the June 1978 order.  Id.[16] Plaintiffs and the United States Department of Justice (DOJ) acting as amicus curiae opposed GISD's attempt to modify the June 1978 order.  Id. at 1253.  On February 23, 1981, during the first day of a two-day hearing on GISD's motion to modify the June 1978 order,

---

[15]Docket Entry No. 103.

[16]Docket Entry No. 114.

-6-

Judge Hugh Gibson granted GISD's motion to substitute Dr. Wayne Blevins for Dr. Frank Vollert.[17]  Plaintiffs argued at the hearing that GISD "failed to comply with a binding order requiring it to implement a desegregation plan at Morgan to reduce the black population at the school to less than 50%," id., and urged the court to order GISD "to implement a plan which realistically promise[d] to achieve that racial balance and to achieve it now." Id.  The United States acknowledged that if the 1978 Order required GISD to establish a fixed racial balance at Morgan, the court had exceeded its equitable powers.  Id.

On May 26, 1981, Judge Gibson issued an opinion granting GISD's motion for relief from the racial percentage goals contained in the June 1978 order, but rejecting GISD's contention that unitary status had been achieved.  Smiley, 514 F.Supp. at 1255-56 and 1262-63.[18]  After carefully considering a number of alternative plans for desegregating Morgan Elementary, Judge Gibson -- like Judge Cowan before him -- concluded that Morgan Elementary was the only remaining vestige of GISD's dual school system, id. at 1257,[19]

_____

[17]See Docket Entry for February 23, 1981.

[18]Docket Entry No. 129.

[19]The court explained, however, that

[t]he defendants' efforts are commendable; vestiges of
the dual system, one substantial, have become attenuated.
Sufficient attenuation has not occurred, however, to
enable this Court to find that the defendants have
                                        (continued...)

and that "the best chance of achieving a permanent solution at
Morgan, i.e., realizing the maximum degree of stable desegregation,
is through the magnet school approach." Id. at 1260. Accordingly,
Judge Gibson

> MODIFIED [the Court Order of June 16, 1978,] insofar as
> it purports to require achievement of any precise racial
> balance at Morgan Elementary School within a scheduled
> time table; and further
>
> ORDERED that defendants continue to implement the present
> court approved desegregation plan consistent with this
> Court's order until such time as this Court may conduct
> a final hearing to determine whether the Galveston
> Independent School District has achieved unitary status
> and a final judgment issues in accordance with that
> finding, or until . . . the Court orders otherwise.

Id. at 1262.

In March of 1986 GISD moved the court for approval of plans to
construct a new elementary school and to change its attendance
plan.[20]  On July 1, 1986, the court conducted a status conference
at which the court granted plaintiffs' oral motion for leave to
file objections to GISD's plans and ordered plaintiffs to file

---

[19](...continued)
fulfilled the constitutional mandate to eliminate from
Morgan all vestiges of state imposed segregation.  It is
the duty of this Court to ensure that the constitutional
violation it has found is fully remedied, and until
redress is complete, and the Court can say with measured
assurance that GISD has achieved unitary status, Morgan
must continue to operate under court scrutiny.

Smiley, 514 F.Supp. at 1257.

[20]Docket Entry No. 130.

-8-

their objections within ten days.[21]   Plaintiffs failed to file

objections to GISD's plans.  On July 18, 1986, Judge Gibson issued

a Memorandum and Order granting GISD's motion and ordering GISD to

continue to implement the court-approved desegregation plan until

such time as the court conducts a final hearing to determine

whether unitary status has been achieved.[22]  Judge Gibson explained

> GISD has been operating under this Court's desegregation
> order for twenty-five years.  In this period, much has
> been accomplished.  Grades 6 through 12 have, for many
> years, been totally integrated.  Grades kindergarten
> through 6 are also completely integrated, with one
> exception.  In 1978, and again in 1981, this Court found
> that there remained a single vestige of the dual school
> system, Morgan Elementary School.  Morgan replaced three
> historically black schools which ranged from 85% to 94%
> black.  By 1981, using a district-wide majority-to-
> minority transfer program and operating Morgan as a
> "magnet" school, Morgan was 63% black.  Today, according
> to statistics submitted by GISD, Morgan remains 63%
> black.

> II.

> GISD seeks to build a school to alleviate present and
> future overcrowding at Parker Elementary School. . .

> The students for the new school will be drawn entirely
> from the student body of Parker, according to GISD. . .
> The new school, according to GISD, will not affect the
> racial distribution at Morgan or other Galveston
> elementary schools.  Plaintiffs have not objected to the
> plan for the new school.

> III.

> GISD also moves to shift attendance in all of its
> elementary schools because of overcrowding throughout the

---

[21]Docket Entry No. 137 (noted on docket sheet as "out of date
sequence").

[22]Docket Entry No. 136.

Island's public schools. . . GISD proposes to house the
fifth grade of Burnett, Rosenberg, and San Jacinto
elementary schools at Stephen F. Austin Middle School and
to house the fifth grade of Morgan, Alamo, and Parker
Elementary schools at Weis Middle School. . . GISD's
proposed attendance plan for fifth grade students is
clearly racially neutral.[23]

In June of 1995 GISD filed a report containing a proposal to
alter its attendance plan or, alternatively, seeking court approval
for alteration of its attendance plan.[24] Although the United States
responded to GISD's filing by asking the court to conduct a status
conference,[25] on February 15, 1996, Judge Gibson denied that request
on grounds that the United States was not a party.[26]

On July 9, 2007, GISD moved the court to substitute counsel
and conduct a Rule 16 conference.[27] On July 13, 2007, the DOJ
acting as amicus curiae moved the court to require GISD to submit
a report detailing its "proposals with respect to closing
elementary schools and reconfiguring the school district."[28] On
August 15, 2007, GISD submitted its Motion for Approval of
Alteration of Attendance Plan pursuant to which GISD sought

---

[23]Id. at pp. 1-2.

[24]Docket Entry No. 142.

[25]Docket Entry No. 151.

[26]See Docket Entry No. 152.

[27]See Docket Entry No. 153.

[28]See Motion of the United States, Amicus Curiae, to Require
Defendants to Submit Report, Docket Entry No. 155, p. 1.

-10-

permission to allow Alamo Elementary to remained closed.[29]   On
August 16, 2007, the court conducted a hearing and ruled that GISD
could proceed with the opening of school on August 27, 2007.[30]   On
March 24, 2008, the court granted GISD's Motion for Approval of
Alteration of Attendance Plan.[31]   On April 9, 2008, GISD filed an
Unopposed Motion for Approval of New Attendance Zones,[32] which the
court granted on April 10, 2008.[33]

On May 5, 2008, a motion was filed to substitute plaintiffs
and plaintiffs' counsel on behalf of petitioners, Rebecca Bates as
next friend of Jeremiah Elija Jones-Bates, Irma I. Flores as next
friend of Laura I. Flores, Guadalupe Galvan as next friend of
Juliana Galvan, and Terry Anne Moorehead and Randy Carlisle Mifflin
as next friends of Laura Ann Mifflin.[34]

On June 9, 2008, GISD filed its Motion for Declaration of
Unitary Status.[35]

On October 7, 2008, the court issued a Memorandum Opinion and
Order granting, in part, the Amended Motion for the Substitution of

---

[29]See Docket Entry No. 162.

[30]See Hearing Minutes and Order, Docket Entry No. 163.

[31]See Order, Docket Entry No. 184.

[32]See Docket Entry No. 185.

[33]See Docket Entry No. 188.

[34]See Amended Motion for the Substitution of New Plaintiffs and
the Appearance of New Counsel of Record, Docket Entry No. 194.

[35]Docket Entry No. 205.

New Plaintiffs and the Appearance of New Counsel to allow Jeremiah Elija Jones-Bates and his mother, Rebecca Bates, to be substituted into this action and ordering plaintiffs' counsel to respond to GISD's motion for declaration of unitary status within thirty days.[36]  On November 10, 2008, plaintiffs untimely filed Plaintiffs' Motion for Extension of Time to Reply to Motion for Unitary Status and a Request for Limited Discovery Period of One Hundred and Twenty Days.[37]  On November 21, 2008, the court held a hearing and granted plaintiffs a four-week extension to file a response to GISD's motion for declaration of unitary status.[38]  On December 22, 2008, plaintiffs sought an additional extension of time to file their response to GISD's motion for declaration of unitary status.[39]

On January 9, 2009, the court held a hearing at which GISD stated that the drop in enrollment caused by Hurricane Ike required it to temporarily reconfigure the district.  The court allowed GISD until March 20, 2009, to file the pending Amended Motion for Declaration of Unitary Status, which GISD filed on March 10, 2009.[40]

On April 9, 2009, the DOJ filed the United States, Amicus Curiae, Response to the Defendant's Amended Motion for Declaration of Unitary Status stating

---

[36]See Memorandum Opinion and Order, Docket Entry No. 246.

[37]See Docket Entry No. 248.

[38]See Hearing Minutes and Order, Docket Entry No. 251.

[39]See Docket Entry No. 252.

[40]Docket Entry No. 255.

[t]he United States' recent involvement in this lawsuit
stemmed from complaints we received regarding Defendant
. . . [GISD's] closing of two schools, Alamo and
San Jacinto elementary schools.  That issue was resolved
when the Court approved the school closings.
Subsequently, on June 9, 2008, GISD filed a motion for
unitary status.  On July 9, the United States responded
advising that additional information would assist the
Court in ruling on GISD's motion.  On August 19, the
District replied and provided additional information.  At
that time, there were no active private plaintiffs in
this case.

On October 7, 2008, the Court allowed Plaintiffs
Jeremiah Elija Jones-Bates and his mother, Rebecca Bates,
to be substituted as named representatives of the
certified class.  Accordingly, there are now active
plaintiffs representing the class.  In addition, at the
January 9, 2009, motion hearing before the Court, the
District agreed to file an amended motion for unitary
status that would include details about the proposed
reconfiguration the District argued was necessary to
adjust to the effects of Hurricane Ike.  The hurricane
caused the closing of several schools in the District,
and the closings raised the question of how GISD would
operate in the future.

On March 10, 2009, the District filed its Amended
Motion for Unitary Status, which included a description
of its interim plan for operating GISD's schools pending
reconstruction.  The United States has reviewed the
Amended Motion and the accompanying data and has no
objection to the District's interim plan.  With respect
to unitary status and particularly whether the Court
should retain jurisdiction to review implementation of
the interim plan, the United States takes no position.
We have no evidence to offer and are unaware of what
evidence private plaintiffs may present that would
further inform the Court on those issues.  Accordingly,
we defer to the parties in the case.[41]

On April 21, 2009, plaintiffs filed Plaintiffs' Counsel's

Suggestion of Mootness and Lack of Current Standing stating that

---

[41]Docket Entry No. 261, pp. 1-2.

-13-

> [i]t has come to the attention of counsel that Hurricane Ike has required the only Plaintiff(s) (Rebecca Bates and her minor child, Jeremiah), that were allowed to intervene in this matter, to move to Beaumont, Texas. The parents and child are not residents of the district and the child is currently not attending [GISD].
>
> Currently, there is no Plaintiff before the Court with standing.[42]

At a hearing held on April 22, 2009, plaintiffs' counsel stated that he no longer had standing to compel discovery or to otherwise participate in this action, and counsel for the DOJ acting as <u>amicus curiae</u> reiterated that the DOJ did not oppose GISD's motion for declaration of unitary status.[43]

## II.  <u>Analysis</u>

GISD's amended motion for declaration of unitary status asks the court to declare GISD to be a unitary school district, and to dismiss the standing court order to desegregate.  GISD asserts that it "does not make this request lightly and has worked diligently over the last four years to rid any remaining vestiges of *de jure* segregation from the District while increasing educational opportunities for all students in GISD."[44]  Since substitute plaintiff Jeremiah Elija Jones-Bates no longer attends a GISD school, and he and his mother, Rebecca Bates, no longer reside in

_____

[42]Docket Entry No. 265.

[43]See Hearing Minutes and Order, Docket Entry No. 266.

[44]Galveston Independent School District's Amended Motion for Declaration of Unitary Status, Docket Entry No. 255, p. 1.

Galveston, Texas, there are no longer any named plaintiffs in this action.  Moreover, since the DOJ acting as <u>amicus curiae</u> has stated that

> [w]ith respect to unitary status and particularly whether the Court should retain jurisdiction to review implementation of the interim plan, the United States takes no position.  We have no evidence to offer and are unaware of what evidence private plaintiffs may present that would further inform the Court on those issues,[45]

GISD's motion for declaration of unitary status is unopposed.

## A.    Subject Matter Jurisdiction

Because federal courts are courts of limited jurisdiction, a question about subject matter jurisdiction may be raised at any time by any party or <u>sua sponte</u> by the court.  <u>See</u> Fed. R. Civ. P. 12(h)(3).  <u>See Kontrick v. Ryan</u>, 124 S.Ct. 906, 915 (2004) (citing <u>Mansfield, C.&L.M. Ry. Co. v. Swan</u>, 4 S.Ct. 510, 511-12 (1884) (challenge to a federal court's subject matter jurisdiction may be made at any stage of the proceedings, and the court should raise the issue <u>sua sponte</u>)).  Absent a named plaintiff to represent the class, the court must examine the existence of subject matter jurisdiction to consider the pending motion for declaration of unitary status.

Article III of the Constitution imposes a threshold requirement that those who seek to invoke the power of federal

---

[45]United States, Amicus Curiae, Response to the Defendant's Amended Motion for Declaration of Unitary Status, Docket Entry No. 261, p. 2.

courts must allege an actual case or controversy.   <u>Graves v.</u>
<u>Walton County Board of Education</u>, 686 F.2d 1135, 1137 (5th Cir.
1982) (citing <u>DeFunis v. Odegaard</u>, 94 S.Ct. 1704, 1705-06 (1974)
(per curiam)).   The Article III "case or controversy" jurisdic-
tional requirement pertaining to class actions was explicated by
the Supreme Court in <u>Sosna v. Iowa</u>, 95 S.Ct. 553, 559 (1975):

> There must not only be a named plaintiff who has such a
> case or controversy at the time the complaint is filed,
> and at the time the class action is certified by the
> District Court pursuant to Rule 23, but there must be a
> live controversy at the time this Court reviews the case
> . . . The controversy may exist, however, between a named
> defendant and a member of the class represented by the
> named plaintiff, even though the claim of the named
> plaintiff has become moot.

As aptly observed by the Fifth Circuit in <u>Graves</u>, "such a class
action as this dealing with continuing constitutional violations
does not become moot because of years of delay . . . which
occasioned the graduation of the named, original student plaintiffs
from the school system before final decision."   686 F.2d at 1138
(quoting <u>Kelley v. Metropolitan County Board of Education of</u>
<u>Nashville and Davidson County, Tennessee</u>, 463 F.2d 732, 743 (6th
Cir. 1972), <u>cert. denied</u>, 93 S.Ct. 322 (1972)).   Because GISD has
been operating pursuant to a court order to desegregate since 1961
and is, therefore, entitled to a declaration of unitary status and
dissolution of the order to desegregate if it can demonstrate that
it has fulfilled the order to desegregate, the court concludes that
GISD's motion for declaration of unitary status is not moot, that
GISD does not lack standing to seek declaration of unitary status,

and that the court does not lack subject matter jurisdiction to
consider the pending motion for declaration of unitary status.  <u>See</u>
<u>Singleton v. Board of Commissioners of State Institutions</u>, 356 F.2d
771, 773 (5th Cir. 1966) (only demonstrably permanent desegregation
of schools would render class action seeking desegregation moot);
<u>Samnorwood Independent School District v. Texas Education Agency</u>,
533 F.3d 258, 265 (5th Cir. 2008) (there is "no question" that
school districts have standing to challenge court orders to which
they are subject).

**B.   Applicable Law**

        A finding that GISD has achieved unitary status is a factual
finding.  <u>Anderson v. School Board of Madison County</u>, 517 F.3d 292,
296 (5th Cir. 2008) (citing <u>Flax v. Potts</u>, 915 F.2d 155, 157 (5th
Cir. 1990)).  The ultimate inquiry in determining whether a school
district has achieved unitary status is whether (1) the school
district has complied in good faith with desegregation orders for
a reasonable amount of time, and (2) the school district has
eliminated the vestiges of prior <u>de jure</u> segregation to the extent
practicable.  <u>Id.</u> at 297 (citing <u>Hull v. Quitman County Board of</u>
<u>Education</u>, 1 F.3d 1450, 1454 (5th Cir. 1993), and <u>Freeman v. Pitts</u>,
112 S.Ct. 1430, 1449 (1992)).

**C.   Application of Law to the Factual Evidence**

        GISD argues that its motion for declaration of unitary status
should be granted because it "has complied with the Court's

-17-

Desegregation Orders for a reasonable period of time and has eliminated all vestiges of *de jure* discrimination to the exten[t] practicable."[46] In support of its motion for declaration of unitary status GISD submits evidence that

> the District's schools are completely integrated . . .
> [and that] the opportunities provided by the District's
> Magnet Program, the Science Technology Engineering and
> Math ("STEM") Academy, Early College Preparatory Program,
> and the District's instructional facilities are equalized
> across the District.    Additionally  .  .  .  the
> transportation burden is shared equally by all students
> in the District and is a much smaller burden than in most
> districts.
>
> The District has worked hard on the *Green* factors,
> . . . and has worked diligently to improve access as well
> as increased curricular opportunities for all GISD
> students, including those similarly situated to the
> Plaintiffs in the original and subsequent Court Orders.[47]

1.   Good Faith Compliance with Desegregation Orders

The first prong of the Anderson analysis requires GISD to show good faith compliance with the desegregation decree "since it was entered." Anderson, 517 F.3d at 297 n.3 (citing Board of Education of Oklahoma City Public Schools, Independent School District No. 89, Oklahoma City, Oklahoma v. Dowell, 111 S.Ct. 630, 638 (1991)).  In Freeman the Supreme Court construed this language in Dowell as requiring "good-faith compliance . . . over a reasonable

---

[46]Galveston Independent School District's Amended Motion for Declaration of Unitary Status, Docket Entry No. 255, pp. 36-37, ¶ 4.1.

[47]Id. at 11 ¶¶ 3.1-3.2.

-18-

period of time." 112 S.Ct. at 1449.  The <u>Freeman</u> Court explained
that

> [a] history of good-faith compliance is evidence that any
> current racial imbalance is not the product of a new
> *de jure* violation, and enables the district court to
> accept the school board's representation that it has
> accepted the principle of racial equality and will not
> suffer intentional discrimination in the future.

<u>Id.</u>  "To meet this obligation, '[f]or at least three years, the
school board must report to the district court.'"  <u>Anderson</u>, 517
F.3d at 297 (quoting <u>Monteilh v. St. Landry Parish School Board</u>,
848 F.2d 625, 629 (5th Cir. 1988)).  "Further, 'the district in
question must have for several years operated as a unitary
system.'"  <u>Id.</u> (quoting <u>Lemon v. Bossier Parish School Board</u>, 444
F.2d 1400, 1401 (5th Cir. 1971) (per curiam)).  GISD's pending
motion for declaration of unitary status does not expressly address
the requirement that it must have complied in good faith with the
court's orders to desegregate for a reasonable amount of time.
Nevertheless, the court is persuaded that GISD's actions both
before and after the revival of this action in the summer of 2007
demonstrate that GISD has complied in good faith for a reasonable
amount of time with the orders entered by this court.

The factual record in this case has been extensively developed
over nearly fifty years of district court supervision.  That record
shows that since 1961 when Judge Connally entered an order
directing GISD to implement "a 'stair-step' freedom of choice plan
aimed at totally dismantling [GISD]'s dual school system by

-19-

September 1973," Smiley, 514 F.Supp. at 1251, GISD has attempted to comply with the court's order to desegregate and has never been found in violation of any court order.  The record in this case also shows that GISD has regularly sought court approval for changes to school plans designed to ensure that the school system was moving forward, not backward, toward compliance with the court's orders.  For example, in 1969 GISD abandoned the freedom of choice plan in favor of "a neighborhood school assignment program which in operation achieved a greater degree of desegregation district-wide than required by the 1961 order."  Id.  When that plan proved "unsuccessful as a tool for desegregating three historically black elementary schools[:]  Washington, Goliad and Carver," id., GISD sought, and in 1975 eventually obtained, voter approval for a bond issue to finance construction of a modern educational facility intended to replace those three schools.  The resulting facility is known as Morgan Elementary.  Id.

In 1978, when Judge Cowan set minimally acceptable performance standards for GISD's operation of Morgan Elementary and ordered GISD to operate Morgan Elementary as a magnet school for the purpose of attracting white and Hispanic students to Morgan Elementary, he prefaced his order with the finding that GISD's operation of Morgan Elementary under its neighborhood school assignment policy constituted the only vestige of GISD's prior de jure dual school system.  See Smiley, 453 F.Supp. at 481.

In 1981, when Judge Gibson abolished the minimally acceptable performance standards that Judge Cowan had established for Morgan Elementary, he reiterated Judge Cowan's finding that Morgan Elementary was the only vestige of GISD's dual school system. Smiley, 514 F.Supp. at 1251-52.   See also id. at 1257 ("The defendants' efforts are commendable; vestiges of the dual system, once substantial, have become attenuated.").

In 1986, when GISD sought court approval for plans to construct a new elementary school, the plaintiffs sought and received leave to file objections to GISD's plans but filed no objections.  For over twenty years, from 1986 to 2007, this action lay dormant and the court received no complaints regarding the manner in which GISD operated its schools.  Approximately two years ago this action was revived when GISD moved the court to substitute counsel and conduct a hearing regarding its decision to close Alamo Elementary.   The court granted GISD's motion and conducted a hearing following which GISD voluntarily agreed to provide information and data to the DOJ, and DOJ representatives toured GISD's schools.   Subsequently, the court conducted a hearing at which the DOJ expressed no opposition to the closure of Alamo Elementary, and the court ordered GISD to file a motion for declaration of unitary status.

GISD's long, almost fifty-year, history of compliance with the court's orders to desegregate demonstrates that GISD has accepted

-21-

the principle of racial equality and will not revert back to a dual school system.    Accordingly, the court concludes that GISD has demonstrated good-faith compliance with the court's orders to desegregate.    See Manning ex rel. Manning v. School Board of Hillsborough County, Florida, 244 F.3d 927, 946 n.33 (11th Cir. 2001), cert. denied, 122 S.Ct. 61 (2001) ("The focus is on the school board's pattern of conduct, and not isolated events, because the purpose of the good-faith finding is to ensure that a school board has accepted racial equality and will abstain from intentional discrimination in the future.").

### 2.    Elimination of Vestiges of Prior De Jure Segregation

The second prong of the Anderson analysis requires GISD to demonstrate that it has eliminated the vestiges of prior de jure segregation to the extent practicable.  Anderson, 517 F.3d at 297. Although this requirement mandates GISD to make "every reasonable effort . . . to eradicate segregation and its insidious residue," complete racial balance is not required.  Id. at 298 (quoting Ross v. Houston Independent School District, 699 F.2d 218, 228 (5th Cir. 1983)).  Instead, courts emphasize whether "the school district has done all that it could to remedy the segregation caused by official action."  Id. (quoting Price v. Austin Independent School District, 945 F.2d 1307, 1314 (5th Cir. 1991)).  See also United States v. Fordice, 112 S.Ct. 2727, 2735 (1992) ("[W]e have consistently asked whether existing racial identifiability is attributable to the State.").

To guide courts in determining whether the vestiges of de jure segregation have been eliminated as far as practicable, the Supreme Court has identified several aspects of school operations, commonly referred to as the Green factors, that must be considered: student assignment, faculty, staff, transportation, extracurricular activities, and facilities. See Dowell, 111 S.Ct. at 638 (discussing Green v. County School Board of New Kent County, Virginia, 88 S.Ct. 1689 (1968)).

Whether GISD has eliminated the vestiges of prior de jure segregation to the extent practicable is necessarily framed both by the allegations in Plaintiffs' First Amended Complaint filed on September 9, 1959,[48] and by the standing order issued by Judge Gibson in 1981.[49] Smiley, 514 F.Supp. at 1263. The Plaintiffs' First Amended Complaint alleged that African American students at GISD schools were discriminated against because of their race and color.[50] Although plaintiffs brought this suit as a class action, because the law in effect at that time did not require a formal order certifying and/or defining the class, the class in this case was not formally defined until August 13, 1976, when the court issued an Order defining the class pursuant to Fed. R. Civ. P. 23(d) as "all blacks who are, or may in the future be, students in

---

[48]Docket Entry No. 4.

[49]Docket Entry No. 129.

[50]Docket Entry No. 4.

the [GISD] and who claim to be segregated and discriminated against by the defendants because of their race and color."[51]  In 1978 and again in 1981 the court concluded that the only remaining vestige of a dual system would be perpetuated by the operation of Morgan Elementary under GISD's neighborhood school assignment policy. Accordingly, the court ordered GISD to desegregate Morgan Elementary by operating Morgan as a magnet school for the purpose of attracting white and Hispanic transfer students.  See Smiley, 453 F.Supp. at 463, and Smiley, 514 F.Supp. at 1248.

In support of its argument that the vestiges of prior de jure segregation have been eliminated to the extent practicable, GISD offers evidence based on the six Green factors showing that all of its schools, including Morgan Elementary, are fully integrated, and that the educational opportunities provided by its instructional facilities and programs are equalized district-wide.

(a)  Student Assignment

Evidence submitted by GISD shows the student population in general and at Morgan Elementary in particular before and after Hurricane Ike struck in September of 2008 as illustrated in the following table:[52]

---

[51]Order, Docket Entry No. 57, p. 1.

[52]Galveston Independent School District's Amended Motion for Declaration of Unitary Status, Docket Entry No. 255, pp. 10 ¶ 3.1 and 12 ¶ 3.5 & n.23, and Exhibit A attached to Docket Entry No. 205, pp. 550-595.

| Race | Total Student Population Before Hurricane Ike | Morgan Student Population Before Hurricane Ike | Total Student Population After Hurricane Ike | Morgan Student Population After Hurricane Ike |
|---|---|---|---|---|
| Black | 30% | 30.41% | 25% | 32.2% |
| Hispanic | 43% | 64.58% | 48% | 59.7% |
| White | 24% | 4.85% | 24% | 7.8% |
| Other | 3% | 0.16% | 3% | 0.3% |

This evidence shows that since 1981, when Judge Gibson issued the last desegregation order, the student population of GISD has changed from being primarily white to primarily Hispanic, and that the percentage of African-American students at Morgan Elementary has decreased from over 63% to 32.2%.  The evidence before the court demonstrates that GISD does not discriminate against African American students because of their race and/or color in the assignment of students to Morgan Elementary or to any other school.

(b)   Faculty and Staff

Evidence submitted by GISD shows that the teaching faculty and administrative staff in general and at Morgan Elementary in particular both before and after Hurricane Ike struck in September of 2008 are diverse and relatively balanced:[53]

_____

[53]Galveston Independent School District's Amended Motion for Declaration of Unitary Status, Docket Entry No. 255, pp. 22-28.

| Race | Total Before Hurricane Ike | | Morgan Before Hurricane Ike | | Total After Hurricane Ike | | Morgan After Hurricane Ike | |
|---|---|---|---|---|---|---|---|---|
| | Faculty | Staff | Faculty | Staff | Faculty | Staff | Faculty | Staff |
| Black | 27.3% | 37% | 12 | 1 | 28.8% | 42.9% | 17 | 1 |
| Hispanic | 13.5% | 14.8% | 17 | 0 | 15.5% | 17.9% | 18 | 1 |
| White | 57.7% | 48.2% | 12 | 1 | 54% | 39.3% | 17 | 1 |
| Other | 1.5% | 0% | 1 | 0 | 1.9% | 0% | 1 | 0 |

This evidence shows that the percentage of African American teachers and administrators in the district corresponds almost exactly with the percentage of African American students, i.e., approximately 30%. Although these figures also show that for the district as a whole white teachers and administrators are somewhat over-represented and that Hispanic teachers and administrators are somewhat under-represented, teachers and administrators of each race are almost equally represented at Morgan Elementary. Moreover, as observed by Judge Cowan in 1978 "[i]n the protracted history of this litigation none of the parties has ever contended that the faculty or administration of GISD has not been effectively integrated." Smiley, 453 F. Supp. 463, 465. The evidence before the court demonstrates that GISD does not discriminate against African American students because of their race and/or color in the assignment of faculty and/or staff to its schools.

(c) Transportation

Evidence submitted by GISD shows that the average time spent on school buses by students of various races who ride school buses varies from 25 to 35 minutes, and that the average time spent on

buses by African American students is 30 minutes, which is only two minutes more than the overall average of 28 minutes:[54]

| Race | Minutes |
|---|---|
| Asian | 25 |
| African American | 30 |
| Hispanic | 28 |
| American Indian | 35 |
| White | 27 |
| All | 28 |

The evidence before the court demonstrates that GISD does not discriminate against African American students because of their race and/or color in the provision of transportation services.

    (d)  Facilities

    GISD has submitted evidence regarding the physical characteristics of each of its instructional facilities indicating that with one exception all of the district's instructional facilities are in relatively the same condition and are maintained in a race-neutral manner.[55]  This evidence also shows that Morgan Elementary was constructed in 1976, that additions and/or

---

[54]See Exhibit K attached to Docket Entry No. 205.

[55]The exception is Crenshaw, which is located on the Bolivar Peninsula accessible only by ferry or long distance drive and which serves as both an elementary and a middle school.  See Galveston Independent School District's Amended Motion for Declaration of Unitary Status, Docket Entry No. 255, p. 32.  See also Exhibit P attached to Docket Entry No. 205.

renovations were made to it in 1983 and 2005, and that it has an estimated remaining life of 43 years.  The evidence before the court demonstrates that GISD does not discriminate against African American students because of their race and/or color in the provision and/or maintenance of its instructional facilities.

(e)  Extracurricular Activities

GISD has submitted evidence showing that a wide range of extracurricular activities are offered to students at the middle and high-school levels, and asserts that "every student has the same opportunity to participate in extracurricular activities."[56] The evidence before the court demonstrates that GISD does not discriminate against African American students because of their race and/or color in the provision of extracurricular activities.

3.  Conclusions

For the reasons explained above, the court concludes that GISD has presented evidence demonstrating that it is entitled to a declaration of unitary status because it has in good faith complied with the court's desegregation orders for a reasonable period of time, and it has eliminated all vestiges of de jure discrimination to the extent practicable.

---

[56]See Galveston Independent School District's Amended Motion for Declaration of Unitary Status, Docket Entry No. 255, p. 31 ¶ 3.43.  See also Exhibit L attached to Docket Entry No. 205.

### III.   <u>Conclusions and Order</u>

For the reasons explained above, Galveston Independent School District's Amended Motion for Declaration of Unitary Status (Docket Entry No. 255) is **GRANTED**.   Accordingly, the court will enter a final judgment declaring GISD unitary and dismissing this action.

**SIGNED** at Houston, Texas, on this the 1st day of May, 2009.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE